363 So.2d 747 (1978)
SYSTEM FUELS, INC., et al., Defendants-Appellants,
v.
Ado BARNES, Plaintiff-Appellee.
No. 50599.
Supreme Court of Mississippi.
October 18, 1978.
Rehearing Denied November 15, 1978.
Green, Cheney, Hughes & McKibben, Dale H. McKibben, Jackson, Donald G. Kruger, Prentiss, for defendants-appellants.
William E. Hathorn, Prentiss, for plaintiff-appellee.
Before PATTERSON, C.J., and BROOM and LEE, JJ.
PATTERSON, Chief Justice, for the Court:
System Fuels, Inc., Triad Oil & Gas Company, and Clarkco Contractors, Inc. appeal from a judgment of $10,000 against them for damaging the property of Ado Barnes. The trial was conducted in the Circuit Court of Jefferson Davis County.
In the early part of 1977 the appellants constructed two small (gathering) pipelines across a 60-acre tract of land, the surface of which was owned by Ado Barnes. It was stipulated that System Fuels, Inc. held valid leases to the minerals beneath the tract which provided:
6. Lessee shall pay for damages caused by lessee's operations to houses, barns, growing crops and fences ...
*748 In addition, the deed conveying the property to Ado Barnes retained the mineral interest together with specific rights of exploration and development. It stated in part:
IN CONSIDERATION of the sum of Seven Hundred & No/100 Dollars, the receipt whereof is hereby acknowledged, the undersigned, J.J. NEWMAN LUMBER COMPANY, a corporation organized and existing under the laws of the State of Mississippi and domiciled at Hattiesburg, in said State, does hereby sell, convey and warrant specially unto Ado Barnes, of RFD 2, Box 10, Silver Creek, Mississippi, the hereinafter described property, excepting and reserving FOREVER unto itself, it's successors and assigns, all of the oil, gas and all of the other minerals of every kind and character in, on or under said land, or that may be produced therefrom, together with the right of ingress, egress and regress at any and all times for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building roads, tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport, own and remove said products, and housing it's or their employees; said property being situated in Jefferson Davis County, Mississippi, described as follows, to-wit: (Emphasis added).
Witnesses for the parties testified to various distances in width necessary to a normal right-of-way required for a 4-inch pipeline as placed on Barnes' property. The distances given varied between 32 and 50 feet and it was admitted by an engineer introduced by the defendants that the right-of-way varied from 30 to 185 feet in width. The witnesses of Barnes also testified the right-of-way was not cleared in the customary manner, was poorly done and the space needed for the right-of-way was grossly exceeded.
An expert in forestry testified for Barnes. He estimated the timber damaged and destroyed by the defendants had a reasonable value of $755.50. The defendants' expert testified the timber damage was $176.20. Bill Harvey, a pipeline contractor, estimated eight to ten acres were affected by the pipeline construction and the total cost to restore the property to its former state would be $13,500.
William T. Banks, a civil engineer, surveyed and platted the right-of-way. He testified two tracts were involved (the 60 acres was composed of two tracts connected into an L-shape), one in Section 7, the other in Section 8. The right-of-way in Section 7 comprised 1.06 acres and that in Section 8, 2.67 acres. The acreage in Section 7 was timbered and that in Section 8 was timbered except for 0.29 acre which was an open field.
Marshall Forrester, President of defendant Triad and Vice-President of defendant Clarkco, testified Triad supervised the drilling, completion and operation of System's wells in the area. The pipelines on Barnes' property were constructed under his supervision and in his opinion were laid in agreement with prudence and common practice in the industry. According to him, the terrain was hilly and moderately timbered. On cross-examination he candidly admitted that Barnes was entitled to damages. The dispute concerns the amount.
The court granted a peremptory instruction for the plaintiff and instructed the jury somewhat as to the measure of damages. It returned a verdict of $10,000 for Barnes.
The appellants assign as error the granting of the peremptory instruction, several mistakes concerning the instructions on damages and contend the award was excessive.
The rule in determining whether the trial court properly granted a peremptory instruction is that all evidence favorable to the party against whom the instruction is granted is accepted as true together with all inferences that may be reasonably drawn therefrom and evidence conflicting with that favorable to the party opposing the instruction is not considered. First National Bank of Vicksburg v. Cutrer, 214 So.2d 465 (Miss. 1968). In applying this rule *749 we find no evidence in the record from which it can be said that the defendants' use of their right to construct a pipeline upon plaintiff's land was reasonable except the entry for that purpose. Indeed, it portrays without contradiction their use of the vested right to construct the pipeline upon the land was unreasonable and excessive. This was recognized by Forrester, President of Triad and Vice-President of Clarco, the operator of System's oil and gas-producing property in Mississippi. He supervised the laying of these lines and acknowledged that Barnes was entitled to damages. We conclude there was no error in granting the peremptory instruction.
We are of the opinion the instructions to the jury concerning the measure of damages were not as specific as they should have been. Broadhead v. Gatlin, 243 Miss. 386, 137 So.2d 909 (1962). However, we do not delve further into this assignment because it merges with the next which necessitates reversal so that a proper award of damages might be made.
The measure of damages proved by the plaintiff and which the jury by its verdict necessarily accepted, was the cost of restoration of the damaged area. However, this measure, although resulting in an unusually large verdict, would not include damages for the timber cut nor the saplings destroyed and the deprivation of timber growth due to the right-of-way easement to maintain the lines during the productivity of the wells. We think the statement in Chevron Oil Company v. Snellgrove, 253 Miss. 356, 364, 175 So.2d 471, 474 (1965), "It is sometimes a perplexing question as to the method to be used in proving damages to real property" not to be an understatement.
The present pipelines traverse land which is open, that covered with saplings and that with merchantable timber. In this circumstance the announcement in Sun Oil Company v. Nunnery, 251 Miss. 631, 170 So.2d 24 (1964), upon which the appellee relies, does not have application because it is directed to damages to realty temporary in nature. Although it is apparent that part of the open land damaged by the appellants is temporary and subject to being restored, as probably are the timbered lands necessary to the construction of the pipeline but not necessary for the right-of-way for maintenance, there remain damages for destroyed saplings and merchantable timber. We think the appellee's reliance upon Sun Oil, supra, was misplaced since the measure of damages stated there does not reach the factual situation now presented.
The better rule, consistent with Sun Oil, supra, is that of Chevron Oil Company v. Snellgrove, 253 Miss. 356, 175 So.2d 471 (1965), in which we held in an unintentional trespass case that damages to the timbered lands injured in geophysical activity should have been measured by the before and after rule although we noted other exceptions to the rule. We stated:
As a general rule, the measure of damages in actions for permanent injury to land where there is no willful trespass is the difference in value in the before-and-after damage to the premises... . It is also true that where the land, or buildings located on the property, has been damaged but the property may be restored to its former condition at a cost less than the value determined by the diminution of the value of the land, the cost of restoration of the property, plus compensation for the loss of its use, may be the measure of damages. Mississippi Power Co. v. Harrison, 247 Miss. 400, 152 So.2d 892 (1963); Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963); Broadhead v. Gatlin, 243 Miss. 386, 137 So.2d 909 (1962); Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So.2d 645, sugg. of error 114 So.2d 667 (1959); Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So.2d 250 (1945); Yorkshire Ins. Co. v. Brewer, 175 Miss. 538, 166 So. 361 (1936); Bowyer & Johnson Const. Co. v. White, 5 Cir., 255 F.2d 482 (1958). This rule, however, is usually confined to the introduction of evidence to show a reduction, and not an increase, of damages above the diminution in value of the land resulting from the injury. The damage for cutting and removing, or destroying, *750 marketable trees, where the trespass is not willful, is generally held to be the value of the timber at the time and place where the trees were cut. Consumers Veneer Co. v. Chestnut, 210 Miss. 430, 49 So.2d 734 (1951); Anderson-Tully Co. v. Campbell, 193 Miss. 790, 10 So.2d 445 (1942); Teasley v. Roberson, 149 Miss. 188, 115 So. 211 (1928); Fleming v. Dunigan Cooperage Co., 144 Miss. 769, 109 So. 851 (1926); Barclay v. Smith, 36 So. 449 (Miss. 1904); Bond v. Griffin, 74 Miss. 599, 22 So. 187 (1897).
On the other hand, where the trees are not marketable as timber, or pulpwood, and have no value separate from the land, the measure of damages is the injury to the land that is caused by their destruction. Young timber, saplings or bushes, smaller than merchantable pulpwood, may have little value separate from the land. The land stripped of growing timber may have little value, but the standing timber and the land together may have considerable market value. The proper measure of damages for the destruction of small natural growth of timber would be the difference in value of the land before and after the injury. 87 C.J.S. Trespass § 121b(4), at 1080 (1954). Damages for destruction of "seedlings" on tree farms may be determined, however, by showing the cost of restoration, plus such injury as may be shown to have been done to the land. See also Stigall v. Sharkey County, 213 Miss. 798, 57 So.2d 146, 58 So.2d 5 (1952). (253 Miss. at 364-365, 175 So.2d at 474-475)
As mentioned, we are considering damages to several categories of real property, more particularly merchantable trees, small natural growth, the ruts of heavy equipment and use in excess of reasonable need. After considering the evidence, and study concerning the proper measure of damages, we have reached the conclusion the measure more likely to be correct, though not exact, is the before and after rule because all damages may be considered within it which would not be true under the restoration rule. The plaintiff is not entitled to both methods. Chevron, supra. The cause is reversed and remanded for a new trial upon damages only. It is affirmed upon liability.
AFFIRMED AS TO LIABILITY; REVERSED FOR ASCERTAINMENT OF DAMAGES ONLY.
SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
SUGG, J., took no part.